United States District Court
Southern District of Texas

**ENTERED**
January 14, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DELIA ANN SELEDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-4574 |
| | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendant's Motion for Summary Judgment (Doc. 10) and Plaintiff's Cross-Motion for Summary Judgment (Doc. 11). The court has considered the motions, the responses, the administrative record, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and Defendant's motion be **DENIED**.

### I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Social Security Administration ("SSA") Commissioner ("Commissioner" or "Defendant") regarding Plaintiff's claim for disability insurance benefits under Title II and for supplemental security income under Title XVI of the Social Security Act.

Plaintiff previously filed applications for disability

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  See Doc. 8, Ord. Dated Feb. 5, 2019.

insurance benefits and supplemental security income benefits in April 2014.[2] The SSA denied the claims initially on June 30, 2014, and again after reconsideration on November 4, 2014.[3]

On July 9, 2015, Plaintiff again applied for disability insurance benefits and supplemental security income benefits claiming an inability to work since December 31, 2014.[4] Plaintiff claimed an inability to work due to depression, anxiety, back pain, and left knee issues.[5] On November 16, 2015, the SSA found Plaintiff not disabled at the initial level of review.[6] On March 15, 2016, the SSA again found Plaintiff not disabled upon reconsideration.[7] Plaintiff requested a hearing before an ALJ.[8] The ALJ granted Plaintiff's request and scheduled the hearing on October 24, 2017.[9]

Prior to examining Plaintiff, Plaintiff's attorney presented an overview of Plaintiff's situation.[10] The attorney stated:

> [W]hat we're looking at as far as severe impairments in

---

[2]  See Doc. 7, Tr. of the Admin. Proceedings ("Tr.") 57, 69, 83, 100.

[3]  See id.

[4]  See Tr. 216, 223.

[5]  See Tr. 249.

[6]  See Tr. 54-79.

[7]  See Tr. 80-115.

[8]  See Tr. 140-41.

[9]  See Tr. 175.

[10] See Tr. 35-37.

> this case, I think it's a combination of mental and physical. At 1F, page 8, she has intractable low-back pain, left lower extremity radiculitis, radiculopathy, and sacroilitis. 3F, page 6, indicates neck back [sic], back pain, both feet pain, left hip pain, leg pain, numbness in the right arms and back and left [sic], and feet. She has cervicalgia at 3F, page 8. And that's kind of where the physical limitations stop. So what we're looking at here, I think, is mainly a mental impairment case.[11]

Notwithstanding the statement that Plaintiff's physical limitations "kind of . . . stop[ped]" on the date of the treatment note "at 3F, page 8[,]" the following colloquy between the attorney and Plaintiff ensued immediately after the attorney completed the overview:

> Q  So why do you feel you can't work at this point in time?
>
> A  I can't stand for a long time. My ankle -- my left ankle gives out and I've just got this tingling in my arm. I mean, even right now, and it's just -- starts to make my hands cramp, so --
>
> Q  Okay.
>
> A  -- I feel like I'm getting arthritis. I don't know, but--
>
> Q  Okay.
>
> A  -- it's gone from one arm to the other.
>
> Q  So you've got some problems with your foot and your arm, correct?
>
> A  Um-hum.
>
> Q  Do you have any problems with your back?

---

[11] Tr. 35.

> A    Yes.
>
> Q    And tell me about that.
>
> A    I have whiplash, so my neck, if I turn it too fast, it will, like stop or something.
>
> Q    Okay.
>
> A    And then in my lower back, it's just so painful, and my buttocks, too.
>
> Q    Okay. Now are you seeing [sic] any treatment for that currently?
>
> A    No.
>
> Q    [O]kay. And you haven't for quite some time. Is that correct?
>
> A    I don't have insurance for that.[12]

Plaintiff further explained that she had enrolled in Medicaid, which did not cover "pain doctors."[13] She affirmed that she consulted her primary care physician about the physical ailments and he referred her to a specialist who did not accept Medicaid.[14]

On November 29, 2017, the ALJ issued an unfavorable decision.[15] Relevant to this court's review, the ALJ found that the alleged period of disability claimed by Plaintiff in the July 2015 applications overlapped the period adjudicated in the

---

[12]   Tr. 35, 37-38.

[13]   Tr. 38.

[14]   See Tr. 38-39.

[15]   See Tr. 18-28.

determinations on the April 2014 applications.[16] In reaching that conclusion, the ALJ identified April 1, 2015, as the date that the April 2014 applications were denied on reconsideration and that the determinations became final and binding.[17] The ALJ stated:

> The determinations therein, denying benefits, is considered res judicata and will not be disturbed. I find that administrative res judicata applies regarding a finding of disability on or before April 1, 2015, the date of the previous determinations that the claimant was not disabled. I will therefore only consider evidence of record beginning on or after April 2, 2015, the day after the previous final and binding determinations were made.[18]

The other relevant portion of the ALJ's decision concerned Plaintiff's physical ailments.[19] In his discussion of the severity of Plaintiff's impairments, the ALJ stated:

> The objective medical evidence of record revealed diagnoses of back and left knee problems. However, the claimant testified at the hearing that treatment for her physical impairments ended in August 2014, which preceded the alleged onset date. Consequently, the last treatment record addressing said impairments was Exhibit B3F, and the most recent documented visit therein was [in] August 2014. I therefore find that there was no objective medical evidence in the record that the impairments have caused the claimant any functional limitations.[20]

Ultimately, the ALJ found that Plaintiff was not disabled at any time from the April 2, 2015, to November 29, 2017, the date of the

---

[16] See Tr. 18.

[17] See id.

[18] Tr. 18-19 (emphasis omitted).

[19] See Tr. 21.

[20] Id.

ALJ's decision.[21]

On December 14, 2017, Plaintiff appealed the ALJ's decision.[22] On September 22, 2018, the Appeals Council denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[23] After receiving the Appeals Council's denial, Plaintiff timely sought judicial review of the decision by this court.

## II. Analysis

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

Upon review of the the administrative record and the parties' briefs, the court finds that the ALJ failed to consider all of the relevant evidence. This failure was the result of two legal errors: (1) incorrectly finding that res judicata applied to the July 2015 applications; and (2) refusing to consider the medical records for treatment of physical ailments after August 2014 and disregarding without explanation Plaintiff's hearing testimony.

The ALJ's first error was in the application of res judicata.

---

[21] See Tr. 19, 28.

[22] See Tr. 215.

[23] See Tr. 1-5.

The regulations grant an ALJ the authority to refuse to consider facts and/or issues presented if the doctrine of res judicata applies. See 20 C.F.R. § 404.957(c)(1). Res judicata applies when the SSA has "made a previous determination or decision under this subpart about [a clamant's] rights on the same facts and on the same issue or issues[] and this previous determination or decision has become final by either administrative or judicial action[.]" Id.

In this case, Plaintiff's April 2014 applications were finally decided by the undisturbed determination on reconsideration. As reflected multiple places in the record, that determination date was November 4, 2014. One disability report from a field office incorrectly stated that "04/01/2015 Initial" was "Date and level of last decision[.]"[24] In turn, the ALJ incorrectly adopted April 1, 2015, as the date of final determination of the April 2014 applications. Had the ALJ correctly applied November 4, 2014, as the date of final determination, he would not have found any overlap between the prior disability period and the disability period Plaintiff alleged in her July 2015 applications as beginning on December 31, 2014. As a result of the error, the ALJ improperly refused to consider evidence related to the first three months of the current disability period.

The ALJ committed another error by ignoring medical evidence

---

[24]    Tr. 236.

and subjective testimony regarding Plaintiff's physical ailments. The regulations commit an ALJ to the consideration of all evidence in the case record in making a decision on disability. See 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).

Here, the ALJ misrepresented Plaintiff's hearing testimony. The ALJ's decision attributes to Plaintiff's hearing testimony a concession that she received no further treatment for her physical impairments after August 2014, prior to the relevant period of alleged disability.

Plaintiff most certainly did not say that "her physical impairments ended in August 2014."[25] In fact, her testimony was that, as of October 24, 2017, the date of the hearing, she continued to experience physical impairments that precluded her from working. That is, more than three years after the ALJ found that her physical conditions had resolved, Plaintiff continued to complain of disabling pain. Plaintiff also did not testify at the hearing that she had not received treatment for those conditions since August 2014. Pursuant to questioning by her attorney, Plaintiff admitted that she had not received treatment "for quite some time."[26] However, she did not affirm that "quite some time" went as far back as August 2014. Moreover, her explanation for not seeking treatment more recently was that insurance did not cover

---

[25] Tr. 21.

[26] Tr. 38.

8

pain management or the specialist to whom her primary care physician had referred her.

It appears that the ALJ improperly conflated the attorney's presentation of the case with Plaintiff's testimony, resulting in an overall misinterpretation. What the attorney meant when he pointed to page 8 of Exhibit 3F as "kind of where the physical limitations stop" is unclear.[27] The attorney's citation is to one page of a five-page treatment note from SETX Institute of Pain Management for an appointment on June 16, 2014.[28] Neither that page nor the remainder of that treatment note reflected that Plaintiff's physical issues had resolved.[29]

The medical record also belies the ALJ's finding that "treatment for her physical impairments ended in August 2014[.]"[30] Plaintiff continued treatment at the SETX Institute of Pain Management for her physical impairments beyond August 2014, including two appointments in late November and late December 2014, which were after the prior disability period and immediately prior to the current alleged onset date.[31] According to the evidence in the record, Plaintiff's last appointment at SETX Institute of Pain

---

[27] Tr. 35.

[28] See Tr. 337.

[29] See Tr. 335-39.

[30] Tr. 21.

[31] See Tr. 418-25, 427-36, 438-45, 489-96, 498-505.

Management was on May 29, 2015.[32]

The ALJ failed to fulfill his duty to consider all of the evidence[33] in the record by not considering the post-August 2014 medical records and Plaintiff's October 2017 subjective testimony. As a general principle, the Fifth Circuit does not require "[p]rocedural perfection in administrative proceedings . . . as long as the substantial rights of a party have not been affected." Kneeland v. Berryhill, 850 F.3d 749, 761 (5th Cir. 2017). On the other hand, "if prejudice results from a violation, the result cannot stand." Morgan v. Colvin, 803 F.3d 773, 777 (5th Cir. 2015)(quoting Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000))(alterations omitted). "Prejudice can be established by showing that the additional considerations might have led to a different decision." Mettlen v. Barnhart, 88 F. App'x 793, at *1 (5th Cir. 2004)(unpublished)(quoting Newton, 209 F.3d at 458).

In Kneeland, the ALJ failed to mention, much less address, a medical opinion. See 850 F.3d at 759. The court held that the failure to address a medical opinion rendered the ALJ's "RFC determination not supported by substantial evidence" and made "it impossible to know whether the ALJ properly considered and weighed

---

[32] See Tr. 438-45.

[33] The ALJ's asseverations in his decision that he reached his conclusion "[a]fter careful consideration of all the evidence" are not entitled to a presumption of truth in this case, where the ALJ explicitly refused to consider parts of the record. Tr. 19; see also Tr. 18, 21, 23; cf. Kneeland v. Berryhill, 850 F.3d 749, 761 (5th Cir. 2017)(finding that "cursory, boilerplate language about carefully considering the entire record [did] not constitute an explanation for rejecting a medical opinion").

an opinion, which directly affect[ed] the RFC" determination. Id. at 759, 762. If that opinion had been given some weight, the court explained, the RFC would have been different and possibly would have affected the existence of other jobs that the plaintiff could perform. Id. at 762.

This court faces a failure to consider objective medical evidence and subjective testimony. Although not the same issue as the failure to mention a medical opinion facing the Kneeland court, the logic holds. Here, the ALJ found Plaintiff's physical impairments not to be severe, explicitly basing that finding on the absence of "objective medical evidence in the record that the impairments ha[d] caused [Plaintiff] any functional limitations."[34] Yet, relevant objective medical evidence was in the record.

The failure to consider that evidence deprived the ALJ's RFC determination of substantial evidence. Of course, the court cannot know whether the ALJ's consideration of that evidence, as well as Plaintiff's hearing testimony, will change his determination that Plaintiff was not disabled. However, because the ALJ based his decision that Plaintiff did not have a severe physical impairment on his finding no objective medical evidence related to Plaintiff's physical ailments during the alleged disability period, consideration of relevant objective medical evidence certainly might change the ALJ's mind. The court thus finds that the ALJ

---

[34] Tr. 21.

might reach a different determination as to the severity of Plaintiff's physical impairments, which would lead to a more limited RFC, which, in turn, could possibly affect the existence of other jobs.

The case should be remanded for further consideration consistent with this opinion. On remand, the Commissioner must consider the record evidence relevant to December 31, 2014, through April 1, 2015, and relevant to September 1, 2014, through November 29, 2017. The Commissioner may also address, if he finds it appropriate, the other issues raised by Plaintiff, namely, whether the record lacks reliable medical opinion evidence related to Plaintiff's RFC and whether the ALJ properly considered and assessed weight to the opinion evidence.

### IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED** and Defendant's motion be **DENIED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the

United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 14th day of January, 2020.

Nancy K. Johnson
United States Magistrate Judge